UNITED STATES DEISTRICT COURT
EASTERN DISTRICT OF VIRGINIA-NORFOLK DIVISION

Case Number: 2:17cv96
**COMPLAINT**

FILED
FEB 14 2017
CLERK, US DISTRICT COURT
NORFOLK, VA

LISA COX
5016 Lake Circle
Portsmouth, VA 23703
(914) 325-8725

V.

LATANYA GRAY, Individually and in her Capacity as Chapter President
4205 Raewick Court
Chesapeake, VA 23321
(757) 536-0150

ALLISON COPELAND, Individually and in her Capacity as former Teen Advisor
122 Birdie Drive
Suffolk, VA 23434
(757) 478-6681

CLAUDIA CURTIS, Individually and in her Capacity as Regional Director
P.O. Box 51696
Durham, NC 27717
(646) 342-5440

THOMASINA WRIGHT, Individually and in her Capacity as Teen Advisor
4053 Estates Lane
Portsmouth, VA 23703
(757) 499-4788

SONYA GRANT, Individually and in her Capacity as Co-Teen Advisor
3216 Bentham Lane
Chesapeake, VA 23321
(757) 617-0850

Jack and Jill of America, Inc.
aka Jack and Jill of Portsmouth
1930 17th Street, N.W.
Washington, D.C. 20009

## I. Basis for Jurisdiction

Diversity of Citizenship and federal Title VII and Title IX issues. Plaintiff is citizen of Portsmouth, VA. Defendants are citizens of Portsmouth, VA and other states.

II. Facts of the Case

1. Jack and Jill of America, Inc. is a National organization designed to expose African-American children to educational, social, civic, and community activities, to enrich themselves and other children from communities outside of Jack and Jill. Mothers hold the membership and pay annual dues plus fees.

2. In May 2001, Plaintiff was Installed in the Westchester County, New York Chapter of Jack and Jill.

3. In June 2013, Plaintiff transferred into the Portsmouth, VA Chapter of Jack and Jill-a small, twenty-one member cliquish Chapter. Plaintiff's Son became a member of the Portsmouth Teen group.

4. In September 2014, Defendants Allison Copeland and Thomasina Wright were Teen Advisor and Teen Co-Advisor respectively.

5. Defendant Allison Copeland refused to permit Plaintiff's Son to participant in the annual Teen scrapbook by failing to provide Plaintiff's Son the materials to participate, even though Plaintiff continuously requested the materials from Defendant Copeland.

6. That same 2014-2015 Program Year, Defendant Allison Copeland also unilaterally failed to abide by the Teen Bylaws in order to detrimentally affect yet another Teen, by depriving the Teen of the opportunity to fairly compete for an award to the exclusion of the Teen and to the benefit of Defendant Copeland's Teen daughter.

7. At the end of that Program year in May 2015, Plaintiff properly made a motion to prevent Defendant Allison Copeland from presiding as Teen Advisor in the future. The motion was seconded, and the majority of Defendant Allison Copeland's long-time friends and Teen colleagues, voted in favor of the motion.

8. Defendant Allison Copeland was incensed. Weeks later at a separate and an unrelated June 2015 planning meeting attended by several members, Defendant Copeland demanded that Plaintiff apologize for making the motion.

9. At the meeting, Defendant Copeland stated in front of witnesses that she had entered into Plaintiff's private membership information system ("MIS") and seen that Plaintiff had come into the organization at a later date than Defendant Copeland had (date of installation is irrelevant in Jack and Jill).

10. Defendant Copeland, a former National Officer, had come into the June 2015 Chapter planning meeting late, apparently with an agenda of unrelated business, and disrupted the meeting.

11. Defendant Latanya Gray, President of the Portsmouth Chapter, did not admonish Defendant Copeland, Defendant Gray's long-time friend.

12. When Plaintiff objected to Defendant Copeland's demand that Plaintiff apologize for the motion, and to Defendant Copeland using her former authority as a National officer to enter Plaintiff's private MIS, Defendant Gray attempted to silence Plaintiff.

13. Plaintiff called the National Headquarters to complain of Defendant Allison Copeland's abuse of power. The National Headquarters suggested Plaintiff file a formal complaint, which Plaintiff did.

14. Defendant Copeland and Plaintiff were given Notice of the Executive Board meeting convened to hear the matter, and were given an opportunity to attend the meeting and present evidence.

15. The complaint was duly heard by the Chapter Executive Board, who found that Defendant Copeland had abused her power, and accordingly, prohibited Defendant Copeland from holding office for the remainder of her tenure in Jack and Jill.

16. Defendant President Gray refused to implement the Executive Board's punishment of her friend Defendant Copeland.

17. Defendant Gray instead, incredibly stated that the Executive Board did not hear all of the facts, and further lied by stating that instead, she was the one who entered Plaintiff's private MIS at the time Plaintiff's MIS showed entry.

18. Due to Defendant Gray's refusal to implement the punishment, Plaintiff filed an Appeal to the Mid-Atlantic Regional Director, Defendant Claudia Curtis herein, and filed a complaint against Defendant President Gray.

19. The Chapter Executive Board was instructed to rehear Plaintiff's complaint against Defendant Allison Copeland.

20. The Chapter Executive Board reheard the complaint, and the resulting and punishment of Defendant Copeland was the same-prohibition of Defendant Allison Copeland holding office for the remainder of her tenure in Jack and Jill.

21. Plaintiff's complaint against Defendant President Gray continued.

22. The Jack and Jill National Advisory Council ("NAC") found that Defendant Gray was responsible for infractions, along with Defendant former National Officer Allison Copeland. (SEE ATTACHED NAC correspondence as Ex. #1)

23. Defendant President Gray and Defendant Allison Copeland were instructed to write letters of apology to the mothers of the Portsmouth Chapter. (SEE ATTACHED 9/10/15 and 10/9/15 apology letters from Latanya Gray and Allison Copeland as Ex. #2).

24. Since that time, Defendants Gray, Copeland (Defendant Wright's best friend in the Chapter), and Wright, in conjunction with Co-Teen Advisor Defendant Sonya Grant, have mounted a systematically orchestrated and relentless retaliatory and harassment campaign against Plaintiff, and against Plaintiff's seventeen-year-old Son.

25. Defendants' retaliation and harassment has extended to retaliation and harassment by Defendants' other long-time friends in the Chapter, depriving Plaintiff and her Son of goodwill, counsel, and companionship of members in the Chapter.

26. This current 2016-2017 Program year, Plaintiff's Son serves as President of the Chapter Teens. Alarmingly, Defendant President Gray selected Defendants Wright and Grant to serve as Teen Advisor and Co-Teen Advisor respectively, with full knowledge of Defendants' history and bad actions toward Plaintiff and Plaintiff's Son.

27. Defendants Wright and Grant have gone out of their way to undermine events and activities Plaintiff's Son has arranged and put forth, some of which were already approved by votes by the Teens.

28. In or around early September 2016, Defendant Sonya Grant cruelly and humiliatingly sent Plaintiff's Son an email, admonishing and chastising him to not send out anything to the Teens without permission, which is uncharacteristic, not required by the Bylaws, and is not in the normal course and custom of practice.

29. On September 16, 2016 at 10:12am, Plaintiff reported Defendant Grant's infraction to Defendant President Gray. Defendant Gray ignored Plaintiff's report and failed to respond to Plaintiff or to take action against her friend Defendant Grant.

30. On September 18, 2016, Plaintiff attended the monthly 3:00pm Teen meeting over which Plaintiff's Son would preside, as mothers had in past years, and pursuant to Robert's Rules of Order, which governs said meetings. Plaintiff sat in the extreme rear of the room.

31. Upon Defendant Wright's entry, she saw Plaintiff and yelled across the room demanding that Plaintiff not attend the meeting. Some Teens had already arrived, and Plaintiff's Son was present.

32. Plaintiff stated that Plaintiff was attending the meeting, albeit in the rear.

33. Defendant Wright then violently grabbed her items, stated that she would not hold the meeting if Plaintiff attended, and stormed out.

34. Plaintiff immediately texted Defendant President Gray at 2:54pm to advise her of Defendant Teen Advisor Wright's scary and violent actions and behavior in front of Chapter Teens.

35. Defendant Gray failed to respond to Plaintiff or take action against her friend Defendant Wright.

36. Soonthereafter, Chapter Vice President Tracey Young entered the room to drop off her Teen Son for the meeting.

37. At that time, Tracey beckoned Plaintiff outside (Plaintiff learned it was at the behest of Defendant Wright.)

38. Plaintiff advised Tracey that Plaintiff was not leaving, and that she could speak to Plaintiff after the meeting.

39. Tracey came to the rear of the room where Plaintiff was seated. Plaintiff advised Tracey again that Plaintiff was not leaving and that she could speak to Plaintiff after the meeting.

40. Tracey asked Plaintiff why Plaintiff wanted to attend the meeting now since Plaintiff did not when Tracey was Teen Advisor for the previous 2015-2016 Program year.

41. Plaintiff advised Tracey that because Plaintiff and Tracey had been friendly, Plaintiff had trusted Tracey, however, given Defendant Wright's history regarding Plaintiff's Son when she was Co-Teen Advisor with Defendant Copeland, Plaintiff did not trust leaving Plaintiff's Son, as Teen President, in Defendant Wright's care.

42. Tracey, who works in the same establishment as Defendant Wright, became irate and confrontational by clasping her hands in Plaintiff's face shouting, "Stop! Just stop!" Tracey then left.

43. Defendant Wright then re-entered the room and loudly instructed Plaintiff not to participate in the meeting.

44. Plaintiff also notified Defendant Claudia Curtis as Regional Director, of Defendant Wright's infractions and behavior in front of Chapter Teens, which is violative of the National Bylaws and the National Code of Ethics. Defendant Curtis failed to respond to Plaintiff or take action against Defendant Wright.

45. A subsequent response was made however, in the form of a retaliatory motion against Plaintiff by Defendant Sonya Grant at the October 20, 2017 mothers' meeting.

46. Given unavoidable academic commitments with Plaintiff's Son, on October 20, 2016 at 6:17pm, Plaintiff notified Defendant President Gray, that Plaintiff would be unable to attend the 7:00pm mothers' meeting that evening. No mention of the events of the September 18, 2016 Teen meeting were on the October 20, 2016 Agenda. (SEE ATTACHED October 20, 2016 meeting Agenda as Ex. #3).

47. Plaintiff later learned that, in contravention of Robert's Rules of Order, Defendant Sonya Grant introduced a retaliatory motion to bar mothers (Plaintiff) from attending the Teen meetings.

48. Plaintiff learned that when mothers stated that the motion appeared retaliatory, Defendant Grant asserted, "Don't worry. The RD (Defendant Regional Director Claudia Curtis herein) has our back." (SEE ATTACHED October 20, 2016 meeting Minutes which motion was incorrectly made to say ALL mothers could not attend [including Advisors], as Ex. #4).

49. Defendant Wright brought the motion to Plaintiff's attention at the January 19, 2017 mothers' meeting in yet another attempt to bar Plaintiff from attending the Teen meetings.

50. On January 21, 2017, Plaintiff wrote to Defendant RD Curtis regarding the continuing harassment, and emailed a copy of the letter to the Executive Director at National Headquarters. (SEE ATTACHED Plaintiff's January 21, 2017 letter to Defendant Curtis, as Ex. #5).

51. Plaintiff had also previously written to Defendant RD Curtis on November 16, 2016 about the harassment, to no avail. Plaintiff had also spoken to Defendant RD Curtis in December about the harassment, again to no avail. (SEE ATTACHED Plaintiff's November 16, 2016 letter to Defendant RD Curtis as Ex. #6).

52. In the December discussion, Defendant RD Curtis advised Plaintiff that she would speak with Defendant President Gray and contact Plaintiff. To-date, Defendant RD Curtis has not contacted Plaintiff as advised.

53. Plaintiff has learned that the National organization's Headquarters has been aware of Defendant Allison Copeland's prior bad behavior as a National officer, but nevertheless failed to

protect members from Defendant Copeland by failing to cancel Defendant Copeland's access to members' private information upon Defendant Copeland's departure as a National Officer.

54. The response to Plaintiff's January 21, 2017 correspondence by Defendant RD Curtis, was to have the biased Defendant Chapter President Gray retaliate further, and without prior Notice or Due Process, in contravention of the National Constitution and Bylaws, and unbeknownst to Plaintiff, improperly convene a meeting to suspend Plaintiff from participating in this upcoming February 16, 2017 mothers' meeting for an alleged infraction of the Code of Ethics, and fining Plaintiff a monetary penalty should Plaintiff attend the meeting, which fine left unpaid, could terminate Plaintiff's lengthy and dedicated membership in the organization. (SEE ATTACHED January 29, 2017 letter to Plaintiff at Ex. #7).

55. Further, not only did Defendant President Gray retaliate against Plaintiff, she outrageously retaliated against Plaintiff's Son by sending him correspondence restricting and limiting his actions as Teen President, and subjecting him to disciplinary action should he mistakenly act, which mistake could likely happen since Defendant President Gray has refused to and failed to train Plaintiff's Son as Teen President, as required by the National Teen Reference Manual. (SEE ATTACHED January 29, 2017 letter to Plaintiff's Son as Ex. #8).

56. While social organizations are given a lot of latitude, Federal statutes prohibit the behavior Plaintiff's Son and Plaintiff have been subjected to, namely malicious and spiteful retaliatory and harassing behavior by Defendants, who have intentionally and maliciously inflicted emotional distress upon Plaintiff and her Son, thereby depriving them both of constructive friendly companionships in the Chapter and organization.

ACCORDINGLY, relief is sought as to each Defendant as follows:

| | | |
|---|---|---|
| Latanya Gray | - | seven hundred fifty thousand ($750,000.00) dollars; |
| Claudia Curtis | - | seven hundred fifty thousand ($750,000.00) dollars; |
| Allison Copeland | - | seven hundred fifty thousand ($750,000.00) dollars; |
| Thomasina Wright | - | five hundred thousand ($500,000.00) dollars; |
| Sonya Grant | - | five hundred thousand ($500,000.00) dollars; and |
| Jack and Jill of America, Inc. | - | one million ($1,000,000.00) dollars; |

and such other and further relief as the Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**
Signed this 14th day of February, 2017.

Lisa Cox, JD, Plaintiff
5016 Lake Circle
Portsmouth, VA 23703
(914) 325 8725

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_____________ DIVISION

Lisa Cox
Plaintiff(s),

v.

Latanya Gray, et al
Defendant(s).

Civil Action Number: 2:17cv96

# LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** Complaint or Pleadings
**(Title of Document)**

Lisa Cox
Name of *Pro Se* Party (Print or Type)

[signature]
Signature of *Pro Se* Party

Executed on: 2/14/2017 (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** ______________________.
**(Title of Document)**

______________________
(Name of Attorney)

______________________
(Address of Attorney)

______________________
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

______________________
(Name of *Pro Se* Party (Print or Type)

______________________
Signature of *Pro Se* Party

Executed on: ______________________ (Date)